UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,        Case No. 16-20254

v.                                   Judith E. Levy
                                   United States District Judge
Edward C. Galka         David R. Grand
                                   Magistrate Judge

                Defendant.
_____/

**ORDER DENYING DEFENDANT EDWARD C. GALKA'S
MOTION FOR COMPASSIONATE RELEASE [85]**

On June 3, 2017, Defendant Edward C. Galka pled guilty to one count of aggravated identity theft, in violation of 18 U.S.C. § 1028(a), one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of unlawful use of an access device, in violation of 18 U.S.C. § 641. (ECF No. 71.) Defendant was sentenced to 96 months' imprisonment. (ECF No. 61, PageID.339.)

On April 17, 2020, Defendant moved for compassionate release and/or reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the danger posed to him by the COVID-19 pandemic

constitutes an "extraordinary and compelling reason" for release. (ECF No. 85.) For the following reasons, Defendant's motion is DENIED.[1]

As an initial matter, the Court acknowledges that Defendant, as an incarcerated individual, faces an increased risk of contracting COVID-19 due to his confinement at FCI Elkton in Lisbon, Ohio. On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*,

---

[1] There is another concern with this petition. Before defendants may bring a compassionate release motion to the courts, 18 U.S.C. § 3582(c)(1)(A) requires that defendants either a) apply for release through the Bureau of Prisons and fully exhaust all administrative remedies; or b) wait 30 days after notifying the Warden that they intend to apply for compassionate release. *Id.* It is unclear from Defendant's motion when he applied to the Warden for release, though he states that he "submitted an electronic message to his Case Manager and Warden regarding his release" and that "there is no staff available to process any exhaustive administrative rights." (ECF No. 85, PageID.578.)

Were the Court inclined to grant Defendant's motion, it would be necessary to determine whether Defendant had properly exhausted his statutory administrative or waiting requirement prior to bringing this motion. *See United States v. Alam*, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). However, the Court need not inquire further as to exhaustion in Defendant's specific case, because it would deny relief on the merits.

Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The Court additionally acknowledges that FCI Elkton itself has confirmed cases of COVID-19 for both detainees and staff. *COVID-19 Cases*, Federal Bureau of Prisons, (May 28, 2020) https://www.bop.gov/coronavirus/; *see also Wilson v. Williams*, No. 20-00794, 2020 WL 1940882 (N.D. Ohio, Apr. 22, 2020). Indeed, since the initial confirmed outbreaks in early 2020, Attorney General Barr has directed federal prisons to systematically evaluate and release inmates most at risk from the COVID-19 pandemic. Memorandum for Director of Bureau of Prisons, Att'y Gen. William Barr, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020).

However, Defendant is not one of those most at risk. The compassionate release statute allows the Court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Guidelines define "extraordinary and compelling reasons" as "suffering from a serious physical or medical condition . . . that

3

substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A).

Defendant argues that he "has documented medical issues for endocrine related issues, and at the time of sentencing required surgery for a bilateral valve sinus collapse." (ECF No. 85, PageID.582-583.) Defendant argues that he has not received proper medical care for these conditions, and that as a result he suffers from breathing problems and lack of sleep. (*Id.* at PageID.85.) Defendant argues that these conditions constitute "extraordinary and compelling reason[s]" requiring compassionate release. (*Id.*)

The Court disagrees. According to BOP's medical records—the validity of which Defendant did not dispute—Defendant currently suffers from farsightedness, knee osteoarthritis, and obesity. (ECF No. 89, PageID.630.) The only mention of endocrine issues in these records is an unspecified "disorder of pituitary gland," for which Defendant has apparently been in remission since February 2018. (*Id.*) There is no specific mention in the records of a bilateral valve sinus collapse, but the

4

records do note that Defendant had an unspecified face injury which also resolved around February 2018.

The CDC has highlighted a number of medical conditions that place individuals at "higher risk for severe illness [from COVID-19]." Centers for Disease Control, *People Who Are at Higher Risk for Severe Illness* (last reviewed May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html [hereinafter "CDC Red Flags"]. As the Supreme Court and Sixth Circuit have recognized, CDC public health and medical determinations are to be given significant weight in evaluating illnesses in the public health context. *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) ("[T]he views of public health authorities, such as the . . . CDC . . . are of special weight and authority."). The only condition in Defendant's current medical records that triggers a match on the CDC's list is "obesity." However, the CDC has limited its warning to "severe obesity," defined as "a body mass index (BMI) of 40 or above." *Id.*

Because Defendant's medical records flagged "obesity" but did not provide Defendant's BMI, the Court ordered the parties to provide this information. (ECF No. 90.) The United States responded to indicate that,

as of February 2018, Defendant's last-known BMI was 32.4. (ECF No. 91, PageID.638.) The United States also informed the Court that it received notice that Defendant had tested positive for COVID-19 on May 24, 2020, that he has been in administrative isolation since May 25, 2020, and as of June 2, 2020 Defendant has been asymptomatic for the duration of his illness. (*Id.*) Because of the administrative isolation, the United States advised, BOP is unable to provide the Court with an updated BMI. (*Id.*) Defendant did not respond to the Court's order.

Based on the medical evidence before it, the Court cannot conclude that that Defendant suffers from any conditions that would trigger a dire outcome from COVID-19. First, though the Court is disturbed to learn that Defendant has contracted COVID-19 in BOP custody, it is heartening that Defendant has thus far experienced an asymptomatic case. This current asymptomatic case does not, alone, mean that Defendant is not at risk of a dire outcome from COVID-19. However, coupled with the lack of available medical evidence to suggest that Defendant is at special risk, the Court is convinced that compassionate release is inappropriate in this case.

Second, though the Court is skeptical of BOP's claim that it cannot weigh and measure Defendant due to his administrative isolation, Defendant's available medical records do not indicate that Defendant suffers from the "severe obesity" flagged by the CDC. Additionally, Defendant himself did not list obesity as a cause for concern in his motion to the Court, and he did not respond to clarify the BOP medical records. Accordingly, the Court cannot find that Defendant's "obesity" puts him at an increased risk for suffering a dire outcome from contracting COVID-19.

Finally, as to Defendant's sinus collapse and his endocrine condition, the medical records indicate that these conditions are resolved and in remission, respectively. (ECF No. 89, PageID.630-631.) Though Defendant argues that his sinus collapse causes him breathing problems and difficulty sleeping, these unfortunate structural sinus issues are distinct from the lung and asthmatic conditions flagged by the CDC as indicators of at-risk individuals. *See* CDC Red Flags.

Accordingly, there is no medical evidence that Defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A). Defendant's current asymptomatic case of COVID-19 further weakens the argument that he is particularly susceptible to a severe case of the disease.

The Court is concerned about the wellbeing of Defendant, as well as that of all detainees, during the pandemic. However, the Court cannot find that Defendant has demonstrated "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A).

Accordingly, Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: June 17, 2020       s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 17, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager