UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

           **Plaintiff**           Honorable Judith E. Levy

-vs-                              Case No. 16-cr-20254

**EDWARD GALKA,**

           **Defendant**
_____/

**EMERGENCY MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

NOW COMES the Defendant, EDWARD GALKA, by his attorney, SANFORD PLOTKIN, and pursuant to this Court's appointment order of July 2, 2020, and 18 USC § 3582 (c) (1) (A), respectfully moves this Honorable Court to reconsider its denial Order of June 17, 2020, and based upon the newly produced, and accurate medical record of the Defendant , to enter an Order for Compassionate Release, and in support thereof, says as follows:

    1. On April 17, 2020, Defendant filed his Pro Se Motion for Compassionate Release.

    2. On June 17, 2020, this Court denied Defendant's Motion for Compassionate Release.

3. The basis for the Court's denial was that, based upon CDC guidelines, in conjunction with 18 U.S.C. 3582(c)(1)(A)(i), Defendant Galka is not an inmate at higher risk of death or serious disease from contracting COVID-19, as he is not suffering from a serious physical or medical condition rendering him most vulnerable, as defined in the CDC guidelines and the governing statutory definitions. (ECF #94, Order Denying Motion, pp 2-4, 6-7).

4. The Court did raise concern over the Defendant's obesity, as that does present a physical/medical condition placing Mr. Galka at higher risk, under the CDC guidelines.

5. However, this Court's denial of Mr. Galka's Motion was based upon erroneous, and outdated CDC criteria regarding obesity, as well as a 2-year-old medical record. On June 25, 2020, the CDC revised its guidelines and identified a BMI of 30 or more as an underlying condition that places individuals at high risk for both contracting and suffering severe illness from COVID-19.https://www.ckc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html(lisitng BMI of 30 or higher).

6. The Court requested that the parties provide supplemental information relative to the obesity issue.

7. The Defendant could not get timely access to his current medical record from the staff at FCI Elkton. The government, which does have immediate

access to Defendant's **current medical record,** chose, for whatever reason, to produce a **2018 record** which documented Mr. Galka's BMI at 32.

8. Defendant Galka finally obtained his **current medical record which documents Defendant's current BMI at 40.** (Medical Record of 6-24-2020, attached as Exhibit A).

9. Moreover, the current medical record indicates that Mr. Galka is suffering from uncontrolled hypertension. His blood pressure on June 24, 2020, was 176/92. The doctor notes that his blood pressure is uncontrolled, adding yet another layer of heightened vulnerability to COVID-19, as defined by the CDC guidelines.

10. It should be further noted that only a couple months back, Defendant's weight was 322 pounds, with a BMI of 41.8. (ECF No. 95, Defendant's Pro Se Brief for Compassionate Release, Ex. A).

11. Defendant has already contracted COVID-19 at FCI Elkton, one of the most uncontrolled, contagious prisons in the country.

12. The Court seemed to erroneously conclude that should Mr. Galka contract COVID-19 yet again, that he would be safe from death or deadly disease. The Court's conclusion is not based upon known medical facts relative to this novel virus. (Order of Denial, p.8).

13. The undersigned officer of the court will represent that he spoke, at the time of this writing, with Dr. Norman Markowitz, M.D., infectious disease specialist with Henry Ford Medical Center for approximately 40 years, who stated unequivocally that there is no evidence to suggest that should an individual contract and suffer an asymptomatic to mild case of COVID-19, that they may not suffer a subsequent severe to deadly case of the mutating virus.  Due to the urgency in filing this matter, counsel has not yet obtained a sworn affidavit from Dr. Markowitz, though counsel stands by this representation.  See Also, https://www.usatoday.com/story/nletter/health/2020/07/16/coronavirus-watch-can-you-get-covid-19-twice/5450233002/  ("The possibility of reinfection is certainly real," Dr. Robert Glatter, an emergency physician at Lenox Hill Hospital in New York City, told USA TODAY. "And one that I am seeing repeatedly on the front lines."  Id.

14. Defendant suffers from underlying conditions defined by the CDC as placing Mr. Galka in high risk of contracting a severe or deadly case of COVID-19, the documentation of which was not available to this Court at the time of its denial of Defendant's motion for compassionate release.

15. Moreover, the conditions at FCI Elkton continue to worsen, and subject Mr. Galka to a most dangerous and deadly BOP facility.

16. That, accordingly, pursuant to 18 USC § 3582 (c) (1) (A) and for the reasons set forth in the attached Brief, he respectfully asserts he is entitled to immediate release.

WHEREFORE, the Defendant, EDWARD GALKA, respectfully prays that this Honorable Court Grant his Emergency Motion for Compassionate Release.

/s/ Sanford Plotkin
SANFORD PLOTKIN (P 38691)
Attorney for Edward Galka
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan  48334-3158
(248) 798-5756
sanfordplotkin@gmail.com

Dated:  July 19, 2020

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

          **Plaintiff**          Honorable Judith E. Levy

-vs-

          Case No 16-cr-20254

**EDWARD GALKA,**

          **Defendant.**
_____/

**MEMORANDUM IN SUPPORT OF**
**EMERGENCY MOTION FOR RECONSIDERATION OF**
**COMPASSIONATE RELEASE**

**I.**
**Introduction**

On June 17, 2020, the Court denied Mr. Galka's Motion for Compassionate Release. The Court based its denial on outdated 2018 medical records, as well as erroneous assumptions concerning the recurring danger of COVID-19. On July 2, 2020, the Court appointed the undersigned counsel to file the instant Emergency Motion for Reconsideration on behalf of Mr. Galka.

After the Court's denial of Defendant's Motion, FCI Elkton **finally** provided Mr. Galka with his most current medical record of June 24, 2020. (Exhibit A, 6-24-2020 BOP medical record). Unlike the 2018 medical record relied upon by the Court and the government, the 2020 medical record discloses that Defendant likelihood of a dire outcome from COVID-19 while confined.

Further, the worsening outbreak at FCI Elkton, of which this Court is already aware, coupled with Defendant Galka's severe obesity (40 BMI), and uncontrolled hypertension, render each day of confinement a potential death sentence for Edward Galka.

## II.
## Extraordinary and Compelling Circumstances
## Warrant Compassionate Release

**A. Mr. Galka Continues to be at a High Risk of Contracting a Severe or Deadly Case of COVID-19 Due to His Medical Conditions.**

Prior to denying Defendant's Motion for Compassionate Release, the Court invited supplemental briefing on the issue of obesity. For reasons unknown to the defense, the government claimed that an accurate BMI was unavailable, as Elkton could not safely weigh Mr. Galka. Nor did the government supply the Court with the most recent medical record. Mr. Galka was not able to obtain the current medical record until only recently.

On June 24, 2020, Mr. Galka was seen by Dr. Kathy McNutt, MD. (Exhibit A, 6-24-2020 BOP medical record). Mr. Galka's BMI was 40. Mr. Galka also has

uncontrolled hypertension, with a blood pressure reading of 176/92, a dangerous elevated range. In February, 2020, Mr. Galka weighed 322 lbs with a 41.8 BMI.

The current medical record also discloses that Mr. Galka has been having trouble breathing. This is not necessarily attributable merely to his severe obesity. COVID-19 causes lung and pulmonary damage. The virus continues to mutate, as well, and much is still not known about the nature and lasing effects of COVID-19. Defendant Galka may well be suffering breathing difficulty from having already contracted COVID-19 while in custody at FCI Elkton.

In its previous denial of Defendant's Motion, the Court erroneously concluded that, "Defendant's current asymptomatic case of COVID-19 further weakens the argument that he is particularly susceptible to a severe case of the disease." (Court Order Denying Defendant's Motion for Compassionate Release, ECF No. 94 at P. 8). There is simply no known medical evidence to support that conclusion. This novel virus continues to mutate, and much is not known about the deadly nature of this virus.

According to known medical data, reinfection from COVID-19 is a real threat to Mr. Galka. "The possibility of reinfection is certainly real," Dr. Robert Glatter, an emergency physician at Lenox Hill Hospital in New York City, told USA TODAY. "And one that I am seeing repeatedly on the front lines."

https://www.usatoday.com/story/nletter/health/2020/07/16/coronavirus-watch-can-you-get-covid-19-twice/5450233002/.

On June 25, 2020, the CDC revised its guidelines and identified a BMI of 30 or more as an underlying condition that places individuals at high risk for both contracting and suffering severe illness from COVID-19. https://www.ckc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  (listing BMI of 30 or higher).

According to Mr. Galka's June 24, 2020 physical examination at FCI Elkton, his BMI is currently 40, placing him in an extremely obese category.  The current medical record also documents that Mr. Galka suffers from uncontrolled high blood pressure (hypertension), which was 176/92 on June 24, 2020, a very dangerous and compromising condition which places him at even higher risk from the dangers of COVID-19.  (See, CDC guidelines, cited above).

The Court concluded in its Order of denial that, "Based on the medical evidence before it, the Court cannot conclude that that Defendant [Galka] suffers from any conditions that would trigger a dire outcome from COVID-19." (Order, *Supra.,* at p.6).  The Court's conclusion, however, was based upon 2-year-old medical records, and an incomplete medical status of the Defendant.

Defendant submits that he also suffers from a sinus collapse.  It is not in remission and compromises his breathing capacity.  Due to COVID-19, any

elective procedure that may heal Mr. Galka's sinuses are not available. This breathing compromise could greatly exacerbate a more serious case of COVID-19.

Mr. Galka's BMI of 40, together with his uncontrolled hypertension (heart disease), demonstrate his suffering from serious medical conditions that make him highly vulnerable should he become re-infected with COVID-19.

**B. The Conditions at FCI Elkton Continue to Place Mr. Galka at Grave Risk.**

The COVID-19 outbreak at FCI Elkton continues to rage uncontrollably. On June 29, 2020, Elkton reported that 236 inmates had tested positive, 7 positive staff members, and 9 deaths. Elkton also reports that 579 inmates have recovered. Of the 2224 inmates tested, 807 tested positive. (https://www.bop.gov/coronavirus/, accessed on June 29, 2020).

Several courts have released inmates from Elkton because of pre-existing vulnerabilities in combination with the prison's failure to contain the COVID-19 outbreak. Courts have characterized the conditions at FCI Elkton as "particularly alarming". *U.S. v Rodriguez,* 2020 WL 1627331, at *9 (E.D. PA. Apr. 1, 2020), and more recently that "FCI Elkton has shown an inability to successfully contain the outbreak thus far." *U.S. v Brooks,* 2020 WL 2509107, at *6 (C.D. Ill. May 15, 2020).

Several courts have concluded that a vulnerable medical condition coupled with the dire conditions at FCI Elkton constitute extraordinary and compelling circumstances. On July 16, 2020, this Court granted a Motion for Compassionate Release as to Joseph Roe, an inmate at FCI Elkton, who is pre-diabetic, and suffers from a BMI of 38. *U.S. v Roe,* Case 5:15-cr-20581, ECF 374, (E.D. MI July 16, 2020). Defendant Galka's medical condition is more dire than that of Mr. Roe. Galka's BMI is 40, and he suffers from hypertension (uncontrolled high blood pressure).

Similarly, in *U.S. v Goins,* 2020 WL 3064452 (E.D. MI, June 9, 2020), the court granted an inmate at FCI Elkton a compassionate release based upon his non-pulmonary hypertension. Again, Defendant Galka's medical status is more dire than Mr. Goins's, in that Galka suffers from both hypertension, and a BMI of 40, well over the CDC severity threshold of 30.

Mr. Galka suffers from a serious medical condition that "substantially diminishes the ability of the inmate to provide self-care within the environment of a correctional facility and from which he is not expected to recover." *U.S. v Roe,* Case 5:15-cr-20581, ECF 374, (E.D. MI July 16, 2020), *U.S. v Goins,* 2020 WL 3064452 (E.D. MI, June 9, 2020), *U.S. v Amarrah,* No. 17-20464, 2020 WL 2220008, *6 (E.D. MI May 7, 2020). Accordingly, extraordinary and compelling reasons to justify release exist.

## III.
## The Section 3553(a) Factors continue to Weigh in Favor of Mr. Galka's Release And He Is Not a Danger to the Community.

The analysis of the 3553(a) factors, as previously set forth in Mr. Galka's previous pleadings, continue to weigh in his favor. Significant to Mr. Galka's personal history and characteristics is his vulnerability to COVID-19 because of his severe obesity and hypertension and incarceration at FCI Elkton-a pertinent factor that could not have been considered at his sentencing. While incarcerated, he has had an impeccable record of conduct, and has taken substantial steps to improve and position himself to avoid a return to crime if released in as much as he has family support, an ability to find employment, and a sold release plan.

Furthermore, the goal of imposing sufficient punishment would be satisfied by releasing Mr. Galka. Mr. Galka has served more than 50% of his sentence, between his time spent in pre-trial detention, and the BOP, and has served meaningful and substantial punishment. Moreover, Mr. Galka well suffer additional restrictions on his liberty through the home confinement condition should the Court release him. The continued restrictions on his freedom of movement from the home confinement condition will satisfy the goal of imposing sufficient punishment.

Moreover, releasing Mr. Galka to home confinement will not subject the public to a serious risk of harm.  Mr. Galka has demonstrated his improvement and taken steps to become productive while in custody.  Mr. Galka has never been cited for misconduct.  Moreover, Mr. Galka is a mature and intelligent gentleman who appears to appreciate the necessary public health measures required to prevent the spread of COVID-19, more than the staff at FCI Elkton, as well as many other inmates.  A perusal of Mr. Galka's previous Pro Se Motion and Brief shows his concern and attention to the CDC's and Dr. Fauci's social distance, mask, and handwashing directives, as he cites them throughout his pleadings filed with this Court.

Mr. Galka also has a safe and effective release plan, should the Court grant his compassionate release.  The Court should release Mr. Galka to the location set forth to the Court in his earlier pleadings without a 14-day quarantine at Elkton, given the dire circumstances at the facility, and the inability to effectively and safely separate positive and negative inmates, or to allow for any form of social distancing or other necessary public health measures.  *See U.S. v Goins,* No. 11-cr-20376, 2020 WL 3064452, *19 n.2 (E.D. MI, June 9, 2020)  (declining to order a 14-day quarantine at FCI Elkton given the circumstances at FCI Elkton and the Court's concern that

quarantine at that facility would subject Goins to an unreasonable risk of COVID-19 infection).

## Conclusion

For all the reasons stated in this emergency motion for reconsideration and the prior pleadings, Mr. Galka respectfully requests that the Court grant compassionate release and allow him to serve the remainder of his sentence on home confinement.

Respectfully submitted,

**s/Sanford Plotkin**
**Sanford Plotkin (P38691)**
Atty. for Def. Galka
30445 Northwestern Hwy., Ste. 225
Farmington Hills, MI  48334
248-798-5756
sanfordplotkin@gmail.com

Dated:  July 19, 2020